IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA

V. Cr. No. 08-50060-001

JOE L. FRANKLIN

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Currently before the undersigned is a 28 U.S.C. § 2255 motion filed by the Defendant/Movant Joe L. Franklin. (Doc. 30). The Government filed a Response (Doc. 33) and the matter is now ripe for consideration. The undersigned, being well and sufficiently advised, finds and recommends as follows:

**BACKGROUND**

1. On October 22, 2008, pursuant to a written plea agreement, Defendant entered a conditional plea to knowingly possessing with intent to distribute more than 50 grams of a mixture or substance containing cocaine base, commonly known as "crack cocaine," a Schedule II controlled substance, in violation of Title 21 U.S.C. § § 841 (a)(1) and (b)(1)(A)(iii). (Doc. 32). The plea was conditioned upon reserving his right to appeal the Court's denial of a motion to suppress. If the appeal was successful, Defendant would be allowed to withdraw



AO72A
(Rev. 8/82)

his plea.

2. In the plea agreement, Defendant agreed that he faced a term of imprisonment for not less than (10) years. (Doc. 20 at p. 4). At the change of plea hearing held on October 22, 2008, United States District Judge Jimm Larry Hendren advised Defendant that if he pled guilty, the Court could sentence him to a sentence of at least 10 years and up to life. (Doc. 32 at pgs. 3-7).

3. On February 23, 2009, a Judgment was entered, sentencing the Defendant to two hundred sixty-two (262) months, to run consecutively to an undischarged term of imprisonment being served by the Defendant in the Arkansas Department of Corrections, in Washington County Circuit Case #CR-2005-535-2; five (5) years supervised release; a fine of $17,500.00; and a special assessment of $100.00. (Doc. 22).

4. On March 6, 2009, Defendant filed a Notice of Appeal from the Judgment, appealing the district court's denial of his motion to suppress evidence. (Doc. 23).

5. On January 25, 2010, the Eighth Circuit Court of Appeals found the district court did not err in denying Defendant's motion to suppress evidence, and affirmed the Judgment. (Doc. 29).

**GROUNDS FOR § 2255 MOTION**

6. On January 14, 2011, Defendant filed the § 2255 motion



AO72A
(Rev. 8/82)

now before the Court, asserting:

Ground One: Trial counsel was ineffective in failing to conduct any meaningful pre-plea investigations including pre-plea interviews with fact witnesses, etc.

Ground Two: Trial counsel was ineffective in failing to disclose pre-plea negotiations and or plea agreement during guilty plea hearing.

Ground Three: Trial counsel was ineffective by neglecting to request that petitioner be sentenced under the 18 to 1 crack ratio policy in existence during petitioner's sentencing.

Ground Four: Trial counsel was ineffective by failing to prepare and file a meritorious brief on appeal during the appellate process, while deliberately misleading the petitioner with respect to contents of issues of constitutional magnitude that were intentionally omitted from counsel's brief of Appellant. Counsel was also ineffective by failing to file a reply brief on appeal.

7. The Government filed a response arguing, inter alia, that Defendant's § 2255 grounds for relief and supporting allegations are conclusory and lack the sufficiency necessary to state a claim, and that even if the Court found otherwise, Defendant is unable to establish he received ineffective assistance of counsel under the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984). For the reasons discussed below, the undersigned agrees.

**APPLICABLE LAW**

8. To succeed on his ineffective assistance of counsel claims, Defendant must first demonstrate that "(1)'counsel's



AO72A
(Rev. 8/82)

representation fell below an objective standard of reasonableness;' and (2) 'the deficient performance prejudiced the defense.'" Miller v. Dormire, 310 F.3d 600, 603(8th Cir. 2002) quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984). The prejudice requirement has been held to require that there be a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. See United States v. Ledezma-Rodriguez, 423 F.3d 830, 836 (8th Cir. 2005). In addition, every effort should be made to eliminate the "distorting effects of hindsight" in assessing the attorney's conduct. Strickland, 466 U.S. at 689.

If Defendant fails to show deficient performance by his counsel, the Court does not need to proceed any further in its analysis of an "ineffective assistance" claim. United States v. Walker, 324 F.3d 1032, 1040 (8th Cir. 2003), cert. denied, 540 U.S. 898 (2003). Defendant's burden is a heavy one, DeRoo v. United States, 223 F.3d 919, 925 (8th Cir. 2000), and there is a "strong presumption that his counsel's conduct fell within the wide range of reasonable professional assistance." Davis v. Norris, 423 F.3d 868, 877 (8th Cir. 2005).

The Court will next examine each ground of Defendant's motion in light of the applicable law.



AO72A
(Rev. 8/82)

**GROUND ONE: FAILING TO CONDUCT ANY MEANINGFUL PRE-PLEA INVESTIGATIONS INCLUDING PRE-PLEA INTERVIEWS WITH FACT WITNESSES, ETC.**

9. Defendant contends that his counsel failed to interview or subpoena Detective Greg Lovett, of the Prairie Grove Police Department, for the pre-plea suppression hearing, for the purpose of developing the court record with "non-record evidence crucial to the defense." He contends that Detective Lovett was the officer who falsely informed the arresting officer, Hunter Carnahan, Patrolman First Class with the Fayetteville Police Department, that probable cause allegedly existed to arrest Defendant.

10. At the suppression hearing, Judge Hendren heard testimony and arguments relating to two suppression motions filed by Defendant. In the first motion, Defendant sought to suppress evidence allegedly seized in a search of Defendant's person following his arrest on June 19, 2008. In the second motion, Defendant sought to suppress certain items that were seized in a search of his residence on June 19, 2008, which search was authorized by a search warrant issued based upon an Affidavit of Detective Lovett. (Doc. 27 at p. 1). At the hearing, Defendant argued that there was not sufficient probable cause to arrest him without a warrant and that the Affidavit in support of the search warrant was facially defective, in that it contained a lot of information that set forth conclusions



AO72A
(Rev. 8/82)

without setting out the factual bases for the conclusions. (Doc. 27 at p. 1).

11. At the suppression hearing, Officer Carnahan testified that on June 19, 2008, he was informed by Detective Lovett that they had probable cause that Defendant had been dealing narcotics, and that "Parole and Probation" wanted him picked up for violation of his parole. (Doc. 27 at p. 7). He further stated that he was familiar with Defendant on sight, and that he was aware that Defendant had a suspended driver's license.

Officer Carnahan testified that on June 19, 2008, he was traveling eastbound on 15th Street when he observed Defendant driving a vehicle. Since Officer Carnahan knew Defendant had a suspended driver's license, he initiated his blue lights and pulled Defendant over. Officer Carnahan approached Defendant and asked him to get out of the car, and when he did, Officer Carnahan told him to put his hands behind his back, and told him he was under arrest for a parole violation. (Doc. 27 at p. 9). Officer Carnahan then took Defendant into custody and transported him to the Police Department. While driving there, Officer Carnahan noticed Defendant was fidgeting a lot in the back of his seat, and when Defendant got out of the car, he walked "differently" and was holding the back of his pants. Officer Carnahan then grabbed the back of Defendant's pants and saw a safety pin attached to the back of his pants, at which



AO72A
(Rev. 8/82)

point, Officer Carnahan held onto the safety pin, stating that he did not know if he was trying to get it to undo his handcuffs. Defendant continued to walk funny and Officer Carnahan asked another detective to help him with another search of Defendant. While conducting the search, a large bag of what appeared to be crack cocaine, individually wrapped up in other baggies, came out of Defendant's pant leg. (Doc. 27 at pgs. 9-10).

12. Officer James Tucker, a parole officer for the State of Arkansas, testified that Defendant was on parole and that Officer Tucker was assigned to monitor Defendant while he was on parole. (Doc. 28 at p. 15). Officer Tucker testified that Defendant was on active parole and that, pursuant to the terms of Defendant's parole, Officer Tucker could search the Defendant's residence at any time without a warrant based on reasonable suspicion that the Defendant violated the conditions of his parole. According to Officer Tucker, the Defendant had committed parole violations - one for testing positive for the use of cocaine on May 10, 2008, and another for failing to report for an office visit on June 4, 2008. (Doc. 27, at p. 16). Officer Tucker testified that these violations would have been sufficient for him to conduct a parole search of Defendant's residence. (Doc. 27 at p. 17). Officer Tucker testified that Detective Lovett had told him they were

investigating Defendant for selling cocaine and that they were going to arrest Defendant on probable cause, and also do a search warrant. Officer Tucker told Detective Lovett that if he was going to arrest Defendant, Officer Tucker was going to "violate his parole as well." (Doc. 27 at p. 17). Officer Tucker assisted Detective Lovett and other officers with a search of Defendant's residence. (Doc. 27 at p. 17).

13. After hearing the testimony, as well as the arguments of counsel, Judge Hendren found that the motions to suppress should be denied. (Doc. 27 at pgs. 33-38).

14. Defendant has failed to show that his counsel was deficient by not calling Detective Lovett at the suppression hearing, or that he was prejudiced in any way by this failure. Even if Officer Carnahan had not had the benefit of Detective Lovett's information, Officer Carnahan testified that he had sufficient probable cause to arrest Defendant, because he knew Defendant was driving with a suspended driver's license. It is therefore reasonable to conclude that Detective Lovett's testimony would not have been necessary with respect to Officer Carnahan's initial stop and arrest.

15. With respect to Officer Tucker's search of Defendant's premises, Officer Tucker testified that he had sufficient reason to search Defendant's residence based upon the fact that Defendant had already violated two conditions of his parole.

Therefore, Defendant's counsel was not deficient in not calling Detective Lovett as a witness at the suppression hearing, because even if Officer Tucker had not had the benefit of Detective Lovett's information, he had reasonable suspicion to search Defendant's residence. Cf. United States v. Becker, 534 F.3d 952, 956-57 (8th Cir. 2008)(warrantless search of defendant's home by probation officer, accompanied by police officers, did not violate Fourth Amendment, given that terms of probation allowed search of defendant's residence based on reasonable suspicion that he violated the terms of his probation; officers had reasonable suspicion based on, inter alia, defendant having tested positive for illegal drugs and his failure to enter drug treatment program as directed by probation officer).

Accordingly, Defendant's counsel was not deficient in failing to call Detective Lovett as a witness, and Defendant suffered no prejudice by his counsel's failure to call Detective Lovett as a witness.

16. Defendant also contends that despite his specific and persistent pre-plea requests for counsel to introduce into evidence during the suppression hearing the police audio and video-taped recordings of the police stop, counsel refused to do so. He contends that both recordings clearly show that his search and seizure was derived from an illegal and pretextual



AO72A
(Rev. 8/82)

stop.

17. At the suppression hearing, Defendant's counsel cross-examined the arresting officer, Officer Carnahan, who testified that prior to the stop, he had spoken to Detective Lovett earlier and ran a check on Defendant and knew that if he saw Defendant driving, it would be a violation of the law because he would be driving with a suspended license. Therefore, irrespective of whether Detective Lovett's statement to Officer Carnahan that there was probable cause for Officer Carnahan to arrest Defendant was accurate, there was sufficient probable cause to stop and arrest Defendant. Therefore, the police audio and video would only show that it was in fact, Defendant who was driving on a suspended license and being pulled over, and would therefore not only be cumulative, but incriminating. Defendant's counsel was not deficient in failing to introduce the evidence, and no prejudice has been shown by counsel's failure to introduce such evidence.

18. Defendant next contends that his counsel intentionally withheld discovery materials from him before the guilty plea negotiations were entered into solely to "mislead, coerce, deceive, and trick petitioner into signing the unreasonable plea agreement." The Defendant does not identify what discovery materials were withheld from him; he merely states that he requested a copy of the Government's case file. Defendant also



AO72A
(Rev. 8/82)

does not articulate any statements made by counsel which actually misled or coerced him into changing his plea. Defendant's assertions are conclusory and are rebutted by the record in this case.

19. At the change of plea hearing held on October 22, 2008, the following colloquy between Judge Hendren and Defendant took place:

> The Court: You're still represented by Mr. John VanWinkle who's represented you before. Is that correct?
> The Defendant: (nods his head up and down.)
> The Court: Are you still satisfied with his service and advice to you?
> The Defendant: Yes.
> The Court: Have you had plenty of time to confer with him about this matter before you came to court this morning?
> The Defendant: Yes.
> The Court: Mr. VanWinkle, are you satisfied that Mr. Franklin is not impaired and that he knows where he is and what he's doing?
> Mr. Van Winkle: I am, Your Honor.
> The Court: And have you indeed had adequate time with him?
> Mr. Van Winkle: Yes, sir.
> . . .
> The Court: All right. So let's look first to the last page. It's dated 22 October, and it looks like you signed it. Did you, sir?
> The Defendant: Yes
> The Court: And Mr. VanWinkle signed it, as well as did Mr. Quinn. Now, Mr. Franklin, did you read this agreement carefully before you signed it?
> The Defendant: To the best of my knowledge.
> The Court: And did you discuss it with Mr. VanWinkle?
> The Defendant: Yes.
> The Court: Do you believe you understand it?
> The Defendant: Yes.
> The Court: Has anybody threatened you or tried to force you to do this?
> The Defendant: No.
> The Court: It's something that, I take it, you're doing on the advice of counsel?
> The Defendant: Yeah.



AO72A
(Rev. 8/82)

The Court: It preserves your right to appeal the ruling that the Court made. Is that what you desire to do?
The Defendant: Yes.
. . .
The Court: All right. Now, has anybody promised you that if you make this agreement and go through with it, that if you don't prevail on appeal or whatever, that you would get no punishment at all or your punishment would be less than what is called for by the law?
The Defendant: No.
The Court: Do you understand it'll be up to me to determine a proper sentence in light of the law that applies?
The Defendant: Yes.
. . .
The Court: All right. Do you understand that, Mr. Franklin? That Paragraph 9 is saying that if you pled guilty, then the Court will sentence you to a sentence of at least 10 years, and it could be more than that. It could be for the rest of your life. Do you understand that?
The Defendant: Yes.
. . .
The Court: Okay. But you understand that if you plead guilty, it would be a term of imprisonment not less than 10 years, but it could be up to life, and also that you could be fined up to 4 million dollars, or receive both a term of imprisonment and a fine within those ranges. Do you understand that?
The Defendant: Yes

(Doc. 32 at pgs.3-7).

20. In addition, during the change of plea hearing, Defendant stated that he understood he had the right to continue to trial and be presumed innocent; that he agreed that the Government's stated factual basis for the plea was true; and when asked if he had any questions before entering his plea, Defendant responded, "no." (Doc. 32 at p. 9). Further, in the written plea agreement, the Defendant acknowledged that he had not been subjected to any threats or coercion to induce him to



AO72A
(Rev. 8/82)

change his plea and he stipulated to the facts supporting his plea. (Doc. 20 ¶¶ 3, 23).

21. At the sentencing hearing held on February 20, 2009, the Court asked Defendant if he was still satisfied with his counsel's service and advice to him, to which Defendant replied "Yes." (Doc. 32 at p. 18).

22. Clearly, had Defendant believed at that time that he was misled, coerced, deceived, or tricked into signing an unreasonable plea agreement, Defendant had plenty of opportunity to make such a claim at the plea hearing.

23. Defendant also contends that his counsel was ineffective for failing to move for a pretrial and pre-plea Franks hearing,[1] in that he knew or should have known that under Franks, Detective Lovett's affidavit was facially defective and that the warrant arising from it should not have been issued.

24. In his motion to suppress, Defendant's counsel argued that the warrant "should not have been issued as the affidavit was insufficient on its face and did not provide the magistrate sufficient information upon which a search warrant could have been issued." (Doc. 10).

25. At the suppression hearing, Judge Hendren ruled as follows, in pertinent part:

Now, based upon what was included in the motions and

[1] Franks v. Delaware, 438 U.S. 154 (1978)

what's heard here, I am extremely doubtful that a warrant – that a hearing was even appropriate in this particular case. But the Court set it down for hearing under the circumstances that have been previously described, and so we have, nonetheless, conducted the hearing.

Now, in *Frank*, the Court, speaking again through Justice Blackman, had this to say: "There is a presumption of validity with respect to the affidavit supporting the Search Warrant, and to mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof."

Now, I think at best, what's been presented here is nothing more than argumentation and cross-examination. There is no assertion that I've heard, and certainly no evidence to back it up, that Detective Greg Lovett engaged in deliberate falsehood or, in fact, that anything he said in the affidavit was even false, let alone deliberately so. I don't see anything to justify a finding that there was a reckless disregard for the truth.

As Mr. Quinn, I think, mentioned in his arguments, the affidavit detailed an investigatory -- detailed investigatory activities that featured the utilization of a confidential informant and a cooperating person, Mr. Watson. They were surveiled, there were controlled buys and deliveries, and there's nothing to suggest that anything that was asserted in the affidavit in those veins were deliberately false or that they were in reckless disregard of the truth. Quite to the contrary, it would seem that the evidence the Court has heard here lines up pretty well with that. The testimony of the witnesses the Court has heard seems to match that. So I'm not confident that this would be the type of case which would warrant a hearing, the absence of even allegations, let alone proof of deliberate falsehood or reckless disregard for the truth.

Now, the Court, in talking about what is permissible in an affidavit -- and this is, again, Justice Blackman -- said this: "When the fourth amendment demands a factual showing sufficient to comprise probable cause, the obvious assumption is that there will be a truthful showing. This does not mean 'truthful' in the sense that every fact recited in the warrant affidavit is necessarily correct,

> for probable cause may be founded upon hearsay and upon information received from informants, as well as upon information within the affiant's own knowledge that sometimes must be garnered hastily. But surely it is to be 'truthful' in the sense that the information put forth is believed or appropriately accepted by the affiant as true.
>
> "It is established law," and they give the citations here, "that a warrant affidavit must set forth particular facts and circumstances underlying the existence of probable cause so as to allow the magistrate to make an independent evaluation of the matter. If the informant's tip is the source of information, the affidavit must recite some of the underlying circumstances from which the informant concluded that relevant evidence might be discovered and some of the underlying circumstances from which the officer concluded that the informant, whose identity need not be disclosed, was credible or his information reliable."
>
> Now, when I review the affidavit that was placed before Judge Zimmerman, I find nothing in it that would call into question that Detective Lovett was falsifying anything, deliberately or otherwise. It's a very detailed and extensive affidavit, and it seems to me that it is entirely sufficient under the guidelines that were laid down in *Frank* to answer the requirements for the issuance of the search of Mr. Franklin's residence.
>
> So the motion attacking the sufficiency of the warrant will be denied for the reasons that I've stated.

(Doc. 27 a pgs. 30-33). It is clear that Judge Hendren conducted a detailed Franks analysis in ruling on the suppression motions. Furthermore, on direct appeal in this case, the Eighth Circuit found that the search warrant was supported by probable cause. United State v. Franklin,No. 09-1549, 362 Fed.Appx. 571 (8th Cir. Jan. 25, 2010).

Defendant has failed to show that counsel was deficient in any way on this issue, or that he was prejudiced.

26. Defendant next contends that his counsel "ill-advised, coerced, misinformed and misled petitioner into signing an unconscionable guilty plea agreement by use of 'false and misleading promises that petitioner would receive not more than 151-188 months in exchange for waiving his rights to a trial by jury, as well as the waiver of any and other rights depicted within the plea agreement.'"

27. As stated by the Government, the Eighth Circuit has held that a defendant who pleads guilty has no right to be apprised of the sentencing options outside the statutory minimum and maximum sentences. United States v. Quiroga, 554 F.3d 1150, 1155 (8th Cir. 2009), cert. denied, 129 S.Ct. 2175 (2009); United States v. Davis, 508 F.3d 461, 463 (8th Cir. 2007), cert. denied, 128 S.Ct. 1731 (2008); United States v. Granados, 168 F.3d 343, 345 (8th Cir. 1999)(per curiam). The plea agreement itself states that Defendant "acknowledges that discussions have taken place concerning the possible guideline range which might be applicable to this case" and that he agreed that "any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the District Court." (Doc. 20 at p. 5). The agreement also states that Defendant acknowledges "that the actual range may be greater than contemplated by the parties" and that in the event the actual guideline range is greater than the parties expected, "the

defendant agrees that this does not give him the right to withdraw his plea of guilty." (Doc. 20 at p. 5).

The Defendant contends that counsel knew he could not read, "with a reading comprehension below that of a fourth grade elementary student. And when counsel read the plea agreement to [Defendant], he misled [the Defendant] to believe that it contained within it agreed upon facts that [the Defendant] would receive a sentence of not more than 151-188 months...." (Doc. 30 at p. 8). The Court finds it hard to believe that the Defendant could not read and understand the plea agreement given the detailed written arguments he has articulated in his current pro se § 2255 motion. At the plea hearing, the Defendant testified that he read the plea agreement "[t]o the best of [his] knowledge," and answered "yes" when asked if he understood it. (Doc. 32 at p. 5). Further, Judge Hendren specifically advised the Defendant that he faced a minimum sentence of 10 years and a maximum of life. Judge Hendren also specifically asked the Defendant if anybody promised him that his punishment would be less than what is called for by law, and the Defendant responded, "No." (Id. at p. 6). The Defendant also acknowledged that it would be up to Judge Hendren to determine a proper sentence. (Id.)

Based upon the foregoing, the Court sees no merit to Defendant's argument that he entered into the plea agreement



AO72A
(Rev. 8/82)

because he was misled by counsel to believe that he would only receive a sentence of 151-188 months. Further, as pointed out by the Government, while Defendant makes the conclusory assertion that he was "tricked" by counsel, "Franklin has never claimed actual innocence and does not suggest he had any chance of acquittal had he went [sic] to trial. Additionally, Franklin was sentenced at the low-end of the possible sentence he could have received." (Doc. 33 at p. 17). Defendant has failed to show that his counsel was deficient or that Defendant was prejudiced when Defendant signed his plea agreement and entered his plea.

**GROUND TWO: FAILING TO DISCLOSE PRE-PLEA NEGOTIATIONS AND OR PLEA AGREEMENT DURING GUILTY PLEA HEARING.**

29. Defendant contends that at the guilty plea and sentencing hearing, his counsel failed to inform the judge of the binding plea agreement counsel had entered into with the prosecutor on Defendant's behalf. Defendant also argues that at the sentencing hearing, his counsel told Defendant that he could not withdraw his previously entered plea of guilty, and told him that he could not inform the Court that a pre-plea agreement had been made outside of the court record, "[w]hich prevented the petitioner from making any mention of the pre-plea agreement conveyed to him by counsel prior to the Guilty Plea Hearing." (Doc. 30 at p. 5). As discussed above, any argument regarding the existence of an agreement outside the written plea agreement

is not supported by the record and the Defendant has failed to demonstrate that his counsel's performance with regard to the plea agreement was deficient or that he was prejudiced in any way by entering into the plea agreement.

**GROUND THREE: TRIAL COUNSEL WAS INEFFECTIVE BY NEGLECTING TO REQUEST THAT PETITIONER BE SENTENCED UNDER THE 18 TO 1 CRACK RATIO POLICY IN EXISTENCE DURING PETITIONER'S SENTENCING**

30. Defendant contends that counsel misled him to believe that he would surely include the new amended crack policy within his appellant brief filed on petitioner's behalf "[and argue such newly passed crack policy before the Eighth Circuit Court of Appeals during oral arguments]." Defendant also contends that "counsel owed him a duty to get his sentencing range lowered during the plea hearing or at Sentencing [or the latest on direct appeal as counsel had stated he would do]." Defendant also argues that counsel failed to provide him with discoverable material which prejudiced him by not being able to perfect his collateral attack on his conviction and sentence, and to attend oral argument. He also contends that he should be resentenced under the Fair Sentencing Act of 2010.

31. The Fair Sentencing Act of 2010 ("FSA"), Pub.L. No. 111-220, 124 Stat. 2372 (Aug. 3, 2010), reduced the penalties for crack cocaine offenses, so that the disparity in sentencing between offenses involving crack and powder cocaine decreased from 100:1 to approximately 18:1. In response to the FSA, the



AO72A
(Rev. 8/82)

United States Sentencing Commission amended the sentencing guidelines to reduce offense levels for crack cocaine offenses effective November 1, 2011, and the amendments have been given retroactive application.

The Defendant was sentenced as a career offender with his offense level determined by USSG § 4B1.1. Although the Sentencing Commission lowered the offense levels related to crack cocaine drug quantities, it did not lower the sentencing range for career offenders under § 4B1.1. Accordingly, the Defendant is not entitled to a sentence reduction based on the amendments to the crack-cocaine guidelines and, thus, defense counsel was not ineffective in failing to argue this issue. See United States v. Griffin, 652 F.3d 793, 803 (7th Cir. 2011)(defendant sentenced as a career offender was ineligible for a sentence reduction based on retroactive amendments to the Sentencing Guidelines concerning crack cocaine, where the amendments did not affect career-offender guideline); United States v. Thompkins, 2011 WL 5429074, *2 (N.D. Iowa Nov. 2, 2011)(same).

32. With respect to Defendant's request for discoverable material, Defendant has failed to show how counsel's failure to provide him with this material changed the outcome of his appeal or prevented him from filing a § 2255 motion. Defendant has failed to show that his counsel was deficient with respect to

his sentencing or in failing to provide discoverable material, or that Defendant was prejudiced.

**GROUND FOUR: TRIAL COUNSEL WAS INEFFECTIVE BY FAILING TO PREPARE AND FILE A MERITORIOUS BRIEF ON APPEAL DURING THE APPELLATE PROCESS, WHILE DELIBERATELY MISLEADING THE PETITIONER WITH RESPECT TO CONTENTS OF ISSUES OF CONSTITUTIONAL MAGNITUDE THAT WERE INTENTIONALLY OMITTED FROM COUNSEL'S BRIEF OF APPELLANT. COUNSEL WAS ALSO INEFFECTIVE BY FAILING TO FILE A REPLY BRIEF ON APPEAL.**

33. Defendant contends that his counsel relinquished his duty to appear during court-ordered oral arguments before the Eighth Circuit Court of Appeals. A review of the Eighth Circuit docket sheet for this case reveals that on November 13, 2009, the case was set for argument on December 18, 2009. However, on November 25, 2009, a docket entry reflects that "ARGUMENT STATUS CHANGED - Argument to NO Argument (KAS)." A December 18, 2009 entry reveals that the case was submitted on the briefs without oral argument. On January 25, 2010, the Eighth Circuit Opinion and Judgment were filed, and on February 16, 2010, the Mandate was issued.

34. According to the Government, on November 25, 2009, Kimberly Smith, Assistant Calendar Coordinator, mailed a letter to Defendant's counsel informing him that he need not appear before the Court because the Court had determined that the case could be submitted on the briefs and record without oral argument. Therefore, Defendant's counsel was not ineffective for failing to appear for oral arguments, since the Eighth



AO72A
(Rev. 8/82)

Circuit determined arguments were not warranted. Furthermore, Defendant has failed to show why a reply brief was even necessary or required. Accordingly, Defendant's claim on this issue is without merit, and Defendant has failed to show his counsel was deficient or that Defendant was prejudiced.

Defendant's argument that he was deliberately misled with respect to the contents of issues of constitutional magnitude that were intentionally omitted from Defendant's appellate brief, the Court finds it to be without merit. The only issue Defendant appears to be referencing is that counsel misled him to believe that he "would surely include the new amended crack policy within his appellant brief filed on petitioner's behalf [and argue such newly passed crack policy before the Eighth Circuit Court of Appeals during oral arguments]." (Doc. 30 at p. 5). Defendant further argues that "although counsel knew the petitioner was eligible for a reduction since his sentence is based on Section 2D1.1 of the drug quantity [sic] table, counsel's performance was constitutionally deficient before, during, and after the pre-plea agreement." (Doc. 30 at p. 6).

As indicated above, Defendant was not entitled to a sentence reduction based on the amendments to the crack-cocaine guidelines and, thus, defense counsel was not ineffective in failing to argue this issue on appeal.



AO72A
(Rev. 8/82)

**WHETHER A HEARING IS REQUIRED**

35. "A district court does not err in dismissing a movant's section 2255 motion without a hearing if (1) the movant's "allegations, accepted as true, would not entitle" the movant to relief, or "(2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Buster v. United States, 447 F.3d 1130, 1132 (8th Cir. 2006); See also Anjulo-Lopez v. United States, 541 F.3d 814, 817 (8th Cir. 2008) (second alteration in original).

36. Defendant does not specify why the district court should hold a hearing, and a review of the record satisfies the undersigned that the record establishes conclusively, as a matter of law, that he is not entitled to relief. See New v. U.S. 652 F.3d 949, 954 (8th Cir. 2011).

**CONCLUSION**

Based on the foregoing, the undersigned recommends that the Defendant's 28 U.S.C. § 2255 motion (Doc. 30) be DENIED in its entirety and DISMISSED WITH PREJUDICE.

**The parties have fourteen days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and**

**specific to trigger de novo review by the district court.**

IT IS SO ORDERED this 16th day of November, 2011.

/s/ Erin L. Setser
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)